IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

```
CHRISTOPHER ARMSTRONG,         )
                               )
              Plaintiff,       )
                               )
     v.                        )  Civil Action No. 06-185J
                               )
MICHAEL J. ASTRUE,             )
COMMISSIONER OF                )
SOCIAL SECURITY,               )
                               )
              Defendant.       )
```

MEMORANDUM JUDGMENT ORDER

AND NOW, this 25th day of September, 2007, upon due consideration of the parties' cross-motions for summary judgment pursuant to plaintiff's request for review of the decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's application for supplemental security income under Titles XVI of the Social Security Act ("Act"), IT IS ORDERED that the Commissioner's motion for summary judgment (Document No. 13) be, and the same hereby is, granted and plaintiff's motion for summary judgment (Document No. 10) be, and the same hereby is, denied.

As the factfinder, an Administrative Law Judge ("ALJ") has an obligation to weigh all of the facts and evidence of record and may reject or discount any evidence if the ALJ explains the reasons for doing so. Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999). Where the ALJ's findings of fact are supported by substantial evidence, a reviewing court is bound by those findings, even if it would have decided the factual inquiry

differently. Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001). These well-established principles preclude a reversal or remand of the ALJ's decision here because the record contains substantial evidence to support the ALJ's findings and conclusions.

Plaintiff protectively filed his pending application for supplemental security income on February 25, 2004, alleging a disability onset date of January 1, 2003, due to "leg problems". Plaintiff's application was denied initially. At plaintiff's request an ALJ held a hearing on December 19, 2005, at which plaintiff, represented by counsel, appeared and testified.[1] On March 20, 2006, the ALJ issued a decision finding that plaintiff is not disabled. On June 16, 2006, the Appeals Council denied review making the ALJ's decision the final decision of the Commissioner.

Plaintiff was 39 years old at the time of the ALJ's decision and is classified as a younger person under the regulations. 20 C.F.R. §416.963(c). Plaintiff has a high school equivalent education but no past relevant work experience and has not engaged in substantial gainful activity since his alleged onset date.

After reviewing plaintiff's medical records and hearing testimony from plaintiff and a vocational expert, the ALJ concluded that plaintiff is not disabled within the meaning of the

---

[1] The record indicates that a hearing originally was scheduled for July 21, 2004. The lengthy delay prior to a hearing finally being held in December of 2005 apparently was the result of plaintiff's attempts to obtain counsel.

Act. The ALJ found that although the medical evidence establishes that plaintiff suffers from the severe impairments of peroneal neurapraxia at the left fibular head, anterior and medial tarsal tunnel syndrome, and the residual effects of a left ankle fusion, those impairments, alone or in combination, do not meet or equal the criteria of any of the impairments listed at Appendix 1 of 20 C.F.R., Part 404, Subpart P.

The ALJ also found that plaintiff retains the residual functional capacity for work at the light exertional level but with certain restrictions recognizing the limiting effects of his physical impairments. Taking into account these limiting effects, a vocational expert identified numerous categories of jobs which plaintiff could perform based upon his age, education, work experience and residual functional capacity, including ticker seller, routing clerk, and coupon redemption clerk at the light exertional level and ticket checker, final assembler and nut sorter at the sedentary exertional level. Relying on the vocational expert's testimony, the ALJ found that plaintiff is capable of making an adjustment to work which exists in significant numbers in the national economy. Accordingly, the ALJ concluded that plaintiff is not disabled.

The Act defines "disability" as the inability to engage in substantial gainful activity by reason of a physical or mental impairment which can be expected to last for a continuous period of at least twelve months. 42 U.S.C. §1382c(a)(3)(A). The impairment or impairments must be so severe that the claimant "is

※AO 72
(Rev. 8/82)

not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy ...." 42 U.S.C. §1382c(a)(3)(B).

The Commissioner has promulgated regulations incorporating a five-step sequential evaluation process for determining whether a claimant is under a disability. 20 C.F.R. §416.920. The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether he has a severe impairment; (3) if so, whether his impairment meets or equals the criteria listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) if not, whether the claimant's impairment prevents him from performing his past-relevant work; and (5) if so, whether the claimant can perform any other work which exists in the national economy, in light of his age, education, work experience, and residual functional capacity. 20 C.F.R. §416.920; Newell v. Commissioner of Social Security, 347 F.3d 541, 545 (3d Cir. 2003). If the claimant is found disabled or not disabled at any step, the claim need not be reviewed further. Id.; see Barnhart v. Thomas, 124 S.Ct. 376 (2003).

Here, plaintiff raises two challenges to the ALJ's findings: (1) the ALJ improperly failed to give controlling weight to the opinions of Dr. Stone, plaintiff's treating physician; and, (2) the ALJ failed to consider the impact of all of plaintiff's medical conditions, severe and not severe, in combination in assessing plaintiff's residual functional capacity. Upon a review

of the record, the court finds that all of the ALJ's findings and conclusions are supported by substantial evidence.

Plaintiff's first argument is that the ALJ improperly evaluated the medical evidence in finding plaintiff not disabled. Specifically, plaintiff contends that the ALJ erroneously failed to give controlling weight to a January 12, 2006, report from Dr. Stone, a treating physician, which plaintiff suggests establishes his disability. In that report, Dr. Stone suggested that plaintiff could have "difficulty" ambulating because of his ankle impairment and may have problems with sleepiness and concentration due to his prescribed medication, which Dr. Stone expected could make work "difficult" for plaintiff. (R. 258). After reviewing the record, the court is satisfied that the ALJ's evaluation of the medical evidence is supported by substantial evidence.

Under the Social Security Regulations and the law of this circuit, opinions of treating physicians are entitled to substantial, and at times even controlling, weight. 20 C.F.R. §416.927(d)(2); Fargnoli, 247 F.3d at 33. Where a treating physician's opinion on the nature and severity of an impairment is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record, it will be given controlling weight. Id. When a treating source's opinion is not entitled to controlling weight, it is evaluated and weighed under the same standards applied to all other medical opinions, taking into account numerous factors including the opinion's supportability,

- 5 -

consistency and specialization. 20 C.F.R. §416.927(d).

Here, the ALJ adhered to the foregoing standards in evaluating the medical evidence and the court finds no error in the ALJ's conclusions. The ALJ expressly addressed Dr. Stone's January 12, 2006, report and explained why he provided it little weight, noting in particular the lack of objective findings supporting it as well as the fact that Dr. Stone rendered his opinion more than 14 months after he stopped treating plaintiff. (R. 19).

The ALJ's evaluation of Dr. Stone's report is supported by substantial evidence in the record. As the ALJ noted, Dr. Stone had not seen plaintiff in more than a year prior to his assessment, and he acknowledged that his "final" diagnoses were not substantiated by the most recent EMG, which was interpreted as normal. (R. 257-58). Thus, because it was not consistent with the objective medical evidence, the ALJ committed no error in rejecting Dr. Stone's assessment. Furthermore, to the extent Dr. Stone suggested limitations arising from the side effects of the prescription medication Neurontin, the ALJ clearly did not error in rejecting such limitations, as plaintiff testified at the hearing that he did not take Neurontin, but took only over-the-counter Tylenol for pain, and that he had done so for at least two years prior to the hearing. (R. 18)

Finally, contrary to plaintiff's contention, Dr. Stone did <u>not</u> opine in his January 12, 2006, report that plaintiff was precluded from <u>all</u> work activity. Instead, he merely recognized

that plaintiff's impairments might be expected to make work "difficult". In this regard, the ALJ agreed, and accommodated any difficulties that plaintiff's impairments would cause by limiting plaintiff to no more than light or sedentary work activity with additional restrictions supported by the objective medical evidence.

The ALJ did a thorough job in his decision in setting forth the relevant medical evidence and explaining why he rejected or discounted any evidence. (R. 18-19). The court has reviewed the ALJ's decision and the record as a whole and is convinced that the ALJ's evaluation of the medical evidence is supported by substantial evidence.

Plaintiff's remaining argument is that the ALJ failed to consider all of plaintiff's impairments in assessing plaintiff's residual functional capacity. Specifically, plaintiff enumerates a list of additional "impairments", including cervical spondylosis, compression fracture, dysesthesia, hypoesthesisia, and complex regional pain syndrome, which he alleges the ALJ failed to consider in combination with plaintiff's severe impairments. This argument equally is unavailing.

Plaintiff sought benefits in this case based on three impairments: leg problems, hand problems and asthma. The ALJ found that plaintiff's "leg problems", i.e., peroneal neurapraxia at the fibular head, anterior and medial tarsal tunnel syndrome, and the residuals from ankle fusion surgery, were severe impairments, but concluded that hand problems and asthma were not

severe impairments under the regulations. Plaintiff does not challenge these findings.

Instead, plaintiff on appeal has combed the record and retrieved every vague reference to any sort of potential condition or possible diagnosis or symptom in any medical report or treatment note and now asserts that the ALJ failed to consider these "conditions" in assessing plaintiff's residual functional capacity. Plaintiff's argument, however, overlooks two critical facts. First, plaintiff's own treating physician, Dr. Stone, noted that his "final" diagnosis in January 12, 2006, was that plaintiff suffers only from the impairments that the ALJ found to be severe. Second, plaintiff himself denied at his hearing that any other impairments, other than leg problems, hand pain and asthma, affected his ability to work.

Moreover, there is no evidence in the record that any of the newly asserted "conditions" that plaintiff now contends the ALJ failed to consider would affect in any way plaintiff's ability to perform substantial gainful activity. First, although plaintiff contends that a July 2002 CT scan showed cervical spondylosis, the examining physician noted that the CT scan of plaintiff's spine was normal, (R. 139), and subsequent x-rays and a CT scan of plaintiff's cervical spine in March 2003 revealed that plaintiff was "free of fracture or deformity". (R. 167).

Second, plaintiff's compression fracture of T12 occurred eight months prior to plaintiff's alleged onset date and subsequent x-rays of plaintiff's thoracic spine during the

relevant period showed no fracture or deformity. (R. 167).

Third, no physician ever confirmed a diagnosis of complex regional pain syndrome. Although Dr. Cope noted plaintiff had some components of that syndrome, he could not confirm such a diagnosis (R. 214), and Dr. Stone omitted complex regional pain syndrome from his final diagnosis. (R. 258). Moreover, it is well settled that disability is not determined merely by the presence of impairments, but by the effect that those impairments have upon an individual's ability to perform substantial gainful activity. Jones v. Sullivan, 954 F.2d 125, 129 (3d Cir. 1991). Accordingly, even a mere diagnosis of complex regional pain syndrome would have been insufficient to support a finding of disability, and there is no objective medical evidence in the record suggesting that plaintiff's ability to perform substantial gainful activity was compromised in any way by this unconfirmed condition.

Finally, dyesthesia and hypoesthesia are not conditions in and of themselves but are merely symptoms of plaintiff's other severe leg impairments. The ALJ specifically noted in his decision that he considered all of plaintiff's impairments in combination in assessing plaintiff's residual functional capacity. The court has reviewed the record and is satisfied that the ALJ took into consideration all of the medically supportable limitations arising from all of plaintiff's impairments, both severe and not severe, in combination and that the ALJ's assessment is supported by substantial evidence.

After carefully and methodically considering all of the medical evidence of record and plaintiff's testimony, the ALJ determined that plaintiff is not disabled within the meaning of the Act. The ALJ's findings and conclusions are supported by substantial evidence and are not otherwise erroneous. Accordingly, the decision of the Commissioner must be affirmed.

                                                           Gustave Diamond
                                            United States District Judge

cc:  John D. Gibson, Esq.
     131 Market Street
     Suite 200
     Johnstown, PA 15901

     John J. Valkovci, Jr.
     Assistant U.S. Attorney
     319 Washington Street
     Room 224, Penn Traffic Building
     Johnstown, PA 15901